FILED '11 MAY 23 11:55 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

MICHAEL BLACK,                                                      10-0136-TC

                    Plaintiff,

          v.                                  FINDINGS AND RECOMMENDATION

MICHAEL J. ASTRUE, Commissioner Social
Security Administration,

                    Defendant.

COFFIN, Magistrate Judge:

      Plaintiff Michael Black seeks review of the Social Security Commissioner's final decision

denying his application for supplemental social security income (SSI) disability payments under Title

XVI of the Social Security Act. For the following reasons, I recommend that this court affirm the

Commissioner's decision.

### Background

      Born in 1955, Black has a high school education. He has worked as a warehouse

worker/clerk, delivery driver, telemarketing sales and closing supervisor, owner and president of a

Page 1 - FINDINGS AND RECOMMENDATION

telemarketing firm, gas station attendant, and mold maker in a steel foundry. The instant action is the last of numerous applications that Black has filed for Social Security disability benefits. He filed his first claim for disability insurance benefits (DIB) under Title II of the Social Security Act in February 1986. (tr. 329). That claim was denied, and Black did not appeal.[1] Black filed a second application for DIB on July 17, 1997, alleging disability beginning August 31, 1996. After that claim was denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge (ALJ). (tr. 329). An ALJ conducted a hearing on April 30, 1999. At the hearing, Black agreed to accept a closed period of disability commencing on April 1, 1997 and ending on April 30, 1999, stipulating his medical condition had improved to the extend that he regained the ability to perform substantial gainful activity. Pursuant to Black's stipulation, his eligibility for benefits ended July 1, 1999. (tr. 329).

Black did not appeal the ALJ's partially favorable decision. Instead, he filed a new application for DIB on July 20, 1999, again alleging disability since August 31, 1996. (tr. 329). On May 1, 2001, the ALJ dismissed this third claim pursuant to res judicata, which applies when the Commissioner has made a previous determination regarding a claimant's rights based on the same issue or issues, and the prior determination has become final. 20 C.F.R. § 416.1457(c)(1). On February 12, 2003, the Appeals Council granted Black's review request and remanded the July 20, 1999 claim for further consideration. While this claim was still pending at the Appeals Council, Black filed a fourth DIB application on September 18, 2001. The 2001 claim was consolidated with the 1999 claim, and an ALJ conducted a new hearing on August 14, 2003. (tr. 329). In a November

---

[1]The Commissioner asserts that the case files for Black's prior claims in 1986, 1997, 1999, and 2001 are not available. (dkt. #20 at 3, n. 1).

Page 2 - FINDINGS AND RECOMMENDATION

17, 2003 decision, the ALJ found that Black had severe impairments, but retained the residual functional capacity to perform his past work. (tr. 329). The Appeals Council denied Black's request for review, and Black appealed the decision to this court. On September 24, 2004, Judge Ancer L. Haggerty issued a decision affirming the Commissioner's denial of benefits. Black did not appeal Judge Haggerty's decision.

On November 8, 2004, Black protectively filed his current (and fifth) claim for DIB, alleging disability beginning July 1, 1999 based on a combination of impairments, including: recurring nightmares with night sweats and shaking; insomnia; inability to concentrate; anxiety; difficulty keeping focus; panic attacks; flashbacks to a car accident; depression; right hand numbness; left arm ulnar nerve damage; numbness of fingers on his left hand; neck and shoulder pain; leg cramping; and status-post broken ribs. (tr. 290-310, 416-18, 420). His DIB claim was denied initially and upon reconsideration. Black also protectively filed an application for supplemental social security income (SSI) disability payments on November 8, 2004, alleging disability beginning on July 1, 1999. (tr. 328). Black's SSI claim was adjudicated separately from his DIB claim, but it was also denied initially and upon reconsideration. (tr. 328).

Through his attorney, Black requested a hearing before an ALJ on his SSI claim only, referring to "the 7-12-05 notice" which was the SSI reconsideration denial. (tr. 64-67, 328). An ALJ conducted a hearing on July 18, 2007. Black was represented by an attorney and personally appeared and testified at the hearing. Black's friend Roy Kamigaki and an impartial vocational expert also appeared and testified. After the hearing, Black submitted additional evidence and requested that the ALJ consider his request for a hearing filed on July 28, 2005 as an appeal of both his SSI and his DIB claims. (tr. 328). In a November 29, 2007 decision, the ALJ dismissed Black's DIB claim based

Page 3 - FINDINGS AND RECOMMENDATION

on res judicata and denied his SSI claim.  (tr. 12-29).  After the Appeals Council denied review, Black appealed the decision to this court.  See 08-cv-539 KI.  The parties stipulated to a remand for further administrative proceedings.  (tr. 355-61).

On September 21, 2009, an ALJ conducted the remand hearing.  Black was represented by an attorney and personally appeared and testified.  C. Kay Wise, an impartial vocational expert also appeared and testified.  The ALJ received supplemental evidence from Wise to clarify the effect of Black's assessed limitations on his occupational base.  The ALJ also asked Wise to identify appropriate jobs and to state the incidence of such jobs in the national economy and to identify and resolve any conflicts between the occupational evidence she provided and the information contained in Social Security Ruling 00-4p.  (tr. 421-31).

In an October 30, 2009 decision, the ALJ found that Black had severe impairments and could not perform his past relevant work, but still retained the residual functional capacity to perform a number of other jobs that existed in the national economy.  Thus, the ALJ concluded that Black was not eligible for SSI disability payments.  (tr. 331).  The ALJ found that Black's DIB claim was barred by res judicata and dismissed it.  (tr. 331).  Black did not file exceptions and the Appeals Council did not assume jurisdiction, making the ALJ's October 30, 2009 decision the Commissioner's final decision.  20 C.F.R. §§ 416.1484, 422.210.

## Disability Analysis

The Commissioner engages in a sequential process of between one and five steps in determining whether an individual is disabled under the Act.  Bowen v. Yukert, 482 U.S. 137, 140 (1987).

Step one requires the ALJ to determine if the claimant is performing any gainful activity.  If

he is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines

if the claimant has a "severe medically determinable physical and mental impairment" that meets the

twelve month duration requirement.  Id. at § 404.1520(a)(4)(ii).  If the claimant does not have such

an impairment, he is not disabled.  At step three, the ALJ determines whether the severe impairment

(or a combination of impairments) meets or equals a "listed" impairment in the regulations.  Id. at

404.1520(a)(4)(iii).  If the ALJ determines the impairment (or combination of impairments) equals

a listed impairment, then the claimant is disabled.  If the adjudication proceeds beyond step three,

the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual

functional capacity (RFC).  The claimant's RFC is an assessment of work-related activities the

claimant may still perform on a regular basis, despite the limitations imposed by his impairments.

Id. 404.1520(a)(4)(e).  The ALJ uses this information to determine if the claimant can perform past

relevant work at step four.  Id. 404.1520(a)(4)(iv).  If the claimant cannot perform his past relevant

work, the ALJ must determine if the claimant can perform other work in the national economy at

step five.  Id. 404.1520(a)(4)(v); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999).

The claimant bears the initial burden of establishing disability.  Tackett, 180 F.3d at 1098.

If the analysis reaches the fifth step, the burden shifts to the Commissioner to show jobs within

claimant's RFC exist in the national economy.  Id.  If the Commissioner meets this burden, the

claimant is not disabled.  20 C.F.R. § 404.1520(g).

### The ALJ's Findings

At step one, the ALJ found that Black had not engaged in substantial gainful activity since

November 8, 2004.  The ALJ found severe impairments of post traumatic stress disorder (PTSD)

from a car accident in November 2005 and left thumb degenerative joint disease, post fracture repair

Page 5 - FINDINGS  AND RECOMMENDATION

at step two.  At step three, however, the ALJ found that Black's impairments, either alone or combined did not equal or meet a listed impairment.  The ALJ concluded that Black was "limited to unskilled work with no driving and no more than occasional public contact." (tr. 336).  The ALJ further found that Black could lift and carry 10 pounds frequently and 20 pounds sometimes; could sit, stand and walk (cumulatively) up to 6 hours per day in an 8-hour workday; had push-pull exertional capacities in his upper and lower extremities which were "unlimited to the weights he could lift and carry (10 pounds frequently and 20 pounds occasionally); could frequently climb stairs or handicapped ramps, but could never climb ropes, ladders or scaffolds; and could occasionally do balancing, bending, stooping, kneeling, crouching or crawling.  The ALJ concluded that Black's manipulative non-exertional limitations require that he only do occasional reaching, gross manipulation and fine manipulation, with his left shoulder, arm and hand.  The ALJ further noted that Black should avoid concentrated exposure to fumes, vibrations, dust and gasses.  (tr. 336).

At step four the ALJ found that Black could not perform his past relevant work.  At step five, however, the ALJ found that, in light of Black's age, education, RFC, and work experience, he could perform work as a surveillance system monitor, cashier II and merchandise marker.  Thus, the ALJ found that Black was not disabled.

## Standard

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported by substantial evidence on the record as a whole.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance,

Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## Discussion

Black disputes the ALJ's finding that he retains the RFC to perform work which exists in significant numbers in the national economy, instead, Black argues that his combined impairments preclude him from working and he is disabled. Black further contends that the ALJ's decision is not supported by substantial evidence in the record. Specifically, he claims that the ALJ improperly rejected both his testimony and that of lay witness Ray Kamigaki, failed to properly evaluate the opinion of Steven Huggins, Psy.D, did not incorporate all credible limitations into the RFC finding, relied on erroneous VE testimony, and failed to fully and fairly develop the record.

## I.    Credibility

### A.    Credibility and the RFC Assessment

I first note that the ALJ's analysis reversed the manner in which he must consider credibility.

The ALJ must consider a claimant's credibility in the course of assessing a residual functional capacity. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Here, the ALJ found that Black's statements regarding the "intensity, persistence and limiting effects of [his medically determinable impairments] are not credible <u>to the extent they are inconsistent with the above residual functional capacity assessment</u>." (tr. 337, emphasis added). No authority suggests that an ALJ may reason that a claimant is not credible based upon the ALJ's own RFC assessment. The ALJ's finding that Black's testimony is not credible to the extent that it diverges from the RFC finding disregards the role of the credibility analysis in determining an RFC.

### B.    Credibility and Lay Witness Testimony

Black argues that the ALJ improperly rejected his testimony on the grounds that Black denied using alcohol since 2005, which conflicted with the testimony of lay witness Roy Kamigaki that Black had a beer with him one week before the hearing. Black argues that because Kamigaki later "clarified" his statement (tr. 164) to say that the "beer" he was referring to was a "non-alcoholic" beer, the ALJ erred in rejecting his testimony on this basis.

Here, the ALJ found that Black lied under oath that he had stopped drinking, specifically noting that, although Black stated he stopped drinking, Kamigaki testified that Black had a beer with him the week before the hearing. Kamigaki testified that Black had a beer with him approximately a week before the hearing and that he had not seen Black drink more than one beer per week for years. (dkt. #20 at 14-15). The ALJ noted that Black's story about his car accident was "throughly unbelievable." (tr. 339). The ALJ observed that Black pleading guilty to a DUII after his car accident belied his testimony that the accident was his ex-wife's fault, even though he was driving and that he did not drink until after the car went into the river in "an attempt to warm up." (<u>Id.</u>)

If the ALJ finds a claimant's testimony as to the severity of his pain and impairments unreliable, then the ALJ must make a credibility determination, with findings specific enough to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Thomas v. Barnhart, 278 F.3d 947, 958-59 (2002). In determining whether complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc). The ALJ may also consider inconsistent testimony. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second guessing. Morgan v. Comm'n of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

I find that the ALJ's credibility finding is supported by substantial evidence in the record. The ALJ noted that Kamigaki's affidavit explaining that Black drank a non-alcoholic beer was not necessarily inconsistent with his testimony that he observed Black drinking a beer a week before the hearing. Moreover, the ALJ noted that the record was not held open after the hearing and that Black's attorney had the chance to examine Kamigaki at the hearing to clarify the issue, but elected not to do so. (tr. 340). Even considering Kamigaki's "clarification," the credibility finding is supported by other evidence, including the Black's testimony about the car accident and his reports to medical providers that he was drinking 2 to 6 beers per day in April 2005. (Tr. 340-41).

To the extent that Black claims that the ALJ erred in giving little weight to Kamigaki's testimony about Black's mental and physical limitations beyond what was supported by the medical record, I find that the ALJ's determination is supported by the record. Lay testimony may be rejected if it is inconsistent with the record of a claimant's activities or the objective evidence in the record. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005). ALJ can reject lay testimony only by

Page 9 - FINDINGS AND RECOMMENDATION

giving specific reasons germane to each witness. Smolen, 80 F.3d at 1298. The ALJ observed that

Kamigaki's testimony was inconsistent with the medical records. Specifically, Kamigaki testified

that Black had difficulty walking, but the record contained no objective evidence to support such an

impairment. (tr. 340). The ALJ also noted that Kamigaki's reports of Black's left hand limitations

were excessive compared to the evidence in the record. I find that the ALJ's decision to give little

weight to the Kamigaki's testimony is supported by the record.

### C.     Harmless Error in Credibility Determination

As noted above, the ALJ reversed the manner in which he should have considered Barrett's

credibility by considering it as compared to the RFC instead of in the course of assessing the RFC.

Thus, I must consider whether the ALJ's reliance on this reverse credibility determination was

harmless error. The Ninth Circuit has held that so long as there remains "substantial evidence

supporting an ALJ's conclusions on...credibility" and the error does not "negate the validity of the

ALJ's ultimate [credibility] conclusion," such is defined harmless and does not warrant reversal.

Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195-97 (9th Cir. 2004). The relevant

inquiry is not whether the ALJ would have made a different decision absent any error, but whether

the ALJ's decision remains legally valid, despite such error. Carmickle v. Comm. Soc. Sec. Admin.,

533 F.3d 1155, 1162 (9th Cir. 2008).

Here, I find that the ALJ's decision finding Black less than credible is valid, despite the error

noted above. The ALJ did not wholly reject Black's allegations. Instead, the RFC is largely

consistent with his testimony and the objective medical evidence. For example, the RFC limits

Black's gross and fine manipulation with his left shoulder, arm and hand to occasional and precludes

him from driving or climbing ladders, scaffolding or ropes. (tr. 336). Further, the remaining valid

Page 10 - FINDINGS AND RECOMMENDATION

reasons for the ALJ finding Black only partially credible are specific, supported by substantial evidence in the record, and demonstrate that to the extent the ALJ found Black's testimony incredible, he did not do so arbitrarily. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001). For example, the ALJ noted that the medical record reflected that, despite insurance coverage, Black had not sought treatment for his shoulder condition and took only over-the-counter medications for his shoulder pain. (tr. 337). The medical record reflected no significant treatment for Black's alleged problems with his knees, back, chest, legs, ears, joints, and lung problems. Further, the records of treatment indicate that when Black did seek treatment for such ailments, he was not proscribed any pain medication. (tr. 338). Finally, the ALJ noted that Black's testimony was riddled with inconsistencies–such as his testimony about his car accident and testimony about his drinking which conflicted lay witness testimony. (tr. 340). In short, it is clear from the record that the ALJ had a proper basis on which to reject Black's testimony.

## II.     Medical Source Statements and Mental RFC

Black argues that improperly rejected the opinion of treating physician Steven Huggins, Psy.D. Specifically, Black contends that no competing medical opinion in the record challenges Dr. Huggins's opinion and that the ALJ erred by not further developing the record with regard to his mental impairments. Specifically, Black argues that the ALJ should have asked Dr. Huggins for clarification (dkt. #19 at 20).

In a 2007 letter, which was drafted by Black's attorney, Dr. Huggins stated that Black was moderately to markedly limited in the area of keeping pace and, due to his mental impairment, would be expected to miss 2 or more days per month of work on average. (tr. 283-84).

The ALJ did not give full weight to Dr. Huggins's opinion, noting that Dr. Huggins's

Page 11 - FINDINGS AND RECOMMENDATION

opinions "suggesting total disability and inability to sustain any work activity" were not consistent with treatment records that indicated that Black's anxiety had improved and Black's GAF scores, which indicated mild to moderate symptoms. (tr. 340). The ALJ further noted that a significant portion of Dr. Huggins's treatment was devoted to discussing Black's divorce proceedings and financial problems and that Dr. Huggins noted that Black's condition would improve as he developed increased ability to deal with "changed life circumstances." (tr. 340). Finally, the ALJ noted that Dr. Huggins's September 29, 2006 report suggests "no long-term preclusion from returning to work is expected." (tr. 340).

Generally, a treating physician's testimony is given more weight than that of an evaluating or reviewing physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of a treating physician. Id. Likewise, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. Id. A physician's opinion must be supported by adequate notes, records, or clinical findings. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

I find that the ALJ provided clear and convincing reasons for rejecting Dr. Huggins opinion of total disability. Dr. Huggins's treatment notes establish that Black's frustration with his ex-wife was a source of many of his treatment discussions. See e.g. tr. 282, 279, 277, 273, 270 A pre-employment activities list completed by Dr. Huggins on September 29, 2006, states that Black may start activities in March 2007, indicating that Black was not permanently disabled from work. (tr. 158-59). Further, the treatment notes reflect that one of Black's more significant issues was his anxiety around driving after his car accident, and the ALJ credited this limitation and incorporated it into the RFC by limiting Black to "unskilled work involving no driving". (tr. 339).

Page 12 - FINDINGS AND RECOMMENDATION

Black further argues that the ALJ erred by "ignor[ing] the need to obtain additional medical evidence" in light of the ALJ's finding that Black's PTSD was a severe impairment and that the PTSD "resulted in diminished capacities." (dkt. #12 at 18-19). In Social Security cases, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). This duty is heightened when the claimant is unrepresented and suffering from a severe mental impairment, such that the claimant is unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Here, there is no indication that the ALJ failed to fully develop the record. Even assuming Black's PTSD rendered him unable to protect his own interests, he was represented at the hearing by counsel. Moreover, the record does not indicate that any record which was important in assessing Black's claim was missing from the record. Instead, Black seems to argue that the ALJ should have contacted Dr. Huggins to ask for "clarification" of Dr. Huggins's opinion. There is no indication, however, that any need for clarification existed. The ALJ did not fail to fulfill his duty to fully and fairly develop the record.

Accordingly, I find that the ALJ's partial rejection of Dr. Huggins's opinion is supported by substantial evidence in the record. I recommend that this determination be sustained.

## II.    RFC and Step Five Findings

As discussed in detail above, I find that the ALJ's RFC finding is supported by substantial evidence in the record. The ALJ's decision reflects that he considered all relevant evidence, including Black's testimony, the lay witness testimony, the medical evidence, and the VE testimony. As the RFC determination is free of legal error and supported by the record, I recommend that it be sustained.

Page 13 - FINDINGS AND RECOMMENDATION

The record establishes that the hypotheticals the ALJ provided to the VE were supported by the medical evidence. The VE identified two jobs which Black could perform: cashier II jobs and merchandise marker jobs. The VE testified that Black's RFC would not preclude performance of those jobs. The Commissioner concedes that the ALJ and the VE did not discuss whether Black's limitation to only occasional public contact would preclude Black from performing the cashier II job. The Commissioner argues that this error is harmless because the job of merchandise marker alone represents a significant number of jobs in the national economy; specifically 149,000 in the national economy and 3,100 such jobs in Oregon. In support of this contention the Commissioner notes that the Ninth Circuit has held that the existence of 3,750 to 4,250 jobs is adequate to support a finding that there is a significant number of jobs the claimant is able to perform. Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986). I agree with the Commissioner that this is a harmless error as the merchandise marker job represents a significant number of jobs in the national economy.

Black argues that the VE's testimony was erroneous because it did not consider that he was limited to only occasional reaching with his left arm, shoulder, and hand. The record reveals that the VE explained that Black could perform the merchandise marker position despite his limitations, including reaching with his left side, because he could maintain the work by primarily using his right hand with only occasional assistance from his left (and more limited) side. (tr. 427-29). Specifically, the VE noted that with the job of merchandise marker, the employee just places a sticker or a price and also noted that in her experience placing people with bilateral use problems, this type of job works out "quite well." (tr. 428-29).

In short, I find that VE's testimony was consistent with Black's limitation.

///

Page 14 - FINDINGS AND RECOMMENDATION

## Conclusion

I recommend that this court affirm the Commissioner's decision.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this **23** day of May 2011.

_____
THOMAS M. COFFIN
United States Magistrate Judge

Page 15 - FINDINGS AND RECOMMENDATION